INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS, SOUTH TEXAS DISTRICT LODGE NO. 37, Plaintiff,

v.

DYNAMIC SCIENCE, INC., Defendant.

No. CIV.A. H–03–2813.

United States District Court,
S.D. Texas,
Houston Division.

June 25, 2004.

---

Patrick M. Flynn, Attorney at Law, Houston, TX, for Plaintiff—International Association of Machinists and Aerospace Workers South Texas District Lodge No. 37.

James Chrisman Phillips, Lloyd, Gosselink, et al, Austin, TX, for Defendant—Dynamic Science, Inc.

## ORDER

HITTNER, District Judge.

Pending before the Court are the Motions for Summary Judgment filed by Plaintiff International Association of Machinists and Aerospace Workers, South Texas District Lodge No. 37 ("IAM") and Defendant Dynamic Science, Inc. ("DSI"). Having considered the motions, submissions, and applicable law, the Court determines that IAM's motion should be granted and DSI's motion should be denied.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff IAM and Defendant DSI are parties to a collective bargaining agreement prescribing the terms and conditions of employment for certain DSI employees working as Air Traffic Control/Weather Observer Technicians and Electronic Maintenance Technicians at Ellington Field Control Tower in Houston, Texas.

Lawrence C. Thompson ("Thompson"), a member of IAM, was employed by DSI as an air traffic controller. DSI terminated his employment on April 20, 2001 for "[p]rofessional [n]egligence and nonconformance to Company and Facility directives." DSI contends just cause existed for Thompson's termination because Thompson "dangerously sequenced two aircraft in the landing sequence ... caus-ing a close call." In contrast, IAM asserts DSI did not have just cause to terminate Thompson because no close call occurred.

Pursuant to the terms of the collective bargaining agreement, Thompson filed a grievance for wrongful termination, which was eventually submitted to arbitration for resolution. The parties chose the Honorable Ed W. Bankston as arbitrator. After both parties completed their cases, Arbitrator Bankston inquired whether they wanted oral closings or to submit post-hearing briefs. DSI's attorney elected oral summation, while the directing business representative for IAM elected to submit a brief. After DSI completed its oral summation, IAM's directing business representative again stated he was going to file a post-hearing brief rather than present oral summation.[1] At that time, DSI did not request the opportunity to submit a response to IAM's post-hearing brief. When IAM's directing business representative filed its "Brief for the Union," it failed to send a copy to DSI.

On June 18, 2003, Arbitrator Bankston issued an Opinion and Award regarding the dispute, wherein he stated DSI "expressly waived opportunity for presentation of Post–Hearing Brief." Ultimately, Arbitrator Bankston sustained the grievance, in all its particulars, finding DSI did not have just cause to discharge Thompson. DSI was ordered to:

remedy the grievance by immediate return of the grievant, *status quo ante*, to his former position of employment, to include full and complete restitution of his CTO rating, seniority, back pay and all contractually related benefits with interest at the legal rate to his date of

---

1. Specifically, IAM's directing business representative stated, "We're just going to write a brief later. I guess if you're not going to write a brief, I can pick a date as long as it's okay with the arbitrator."

reemployment such as to make him abundantly whole. The Company is directed to purge the grievant's employment records of any and all reference to the incident at issue.

However, DSI failed to comply with the terms of Arbitrator Bankston's award, claiming: (1) the arbitrator considered *ex parte* communication by way of IAM's post-hearing brief in determining the award and thus exceeded the scope of his authority,[2] and (2) the arbitrator is guilty of misconduct and/or misbehavior, which prejudiced DSI's rights in arbitration, according to the Federal Arbitration Act ("FAA").

Because the parties were unable to resolve the issue, IAM filed this action seeking enforcement of Arbitrator Bankston's award. Subsequently, IAM filed its motion for summary judgment on October 2, 2003, requesting this Court uphold or enforce the arbitrator's award pursuant the Labor Management Relations Act ("LMRA"). DSI later filed its motion for summary judgment on March 15, 2004, claiming the arbitrator's award should be vacated because the arbitrator was guilty of misconduct, which prejudiced DSI.

## STANDARD OF REVIEW

■ Summary judgment is proper when "there is no genuine issue as to any material fact and [ ] the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The court must view the evidence in a light most favorable to the non-movant. *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir.1997). Initially, the movant bears the burden of presenting the basis for the motion and the elements of the causes of action upon which the non-movant will be unable to establish a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden then shifts to the non-movant to come "forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting FED. R. CIV. P. 56(e)). "A dispute about a material fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 956 (5th Cir.1993) (citation omitted). The non-movant's bare assertions, standing alone, are insufficient to create a material issue of fact and defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Conclusory allegations unsupported by specific facts will not prevent an award of summary judgment; the plaintiff cannot rest on his allegations to get to a jury without any significant probative evidence tending to support the complaint. *Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd. of San Antonio*, 40 F.3d 698, 713 (5th Cir. 1994). Thus, the non-movant's burden cannot be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence. *Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 215 (5th Cir.1998). Furthermore, it is not the function of the court to search the record on the non-movant's behalf for evidence which may

---

**2.** IAM was represented by its directing business representative at the arbitration, who is not an attorney. The Fifth Circuit has held that a "union representative is not a lawyer and he cannot be expected to function as one." *Freeman v. O'Neal Steel, Inc.*, 609 F.2d 1123, 1127–28 (5th Cir.1980). Therefore, this Court will not consider the directing business representative's failure to send a copy of its brief to DSI as "purposeful" and "knowing," even though DSI asserts it as such.

raise a fact issue. *Topalian v. Ehrman,* 954 F.2d 1125, 1137 n. 30 (5th Cir.1992).

## LAW AND ANALYSIS

■ Judicial review of an arbitration award pursuant to a collective bargaining agreement is authorized by Section 301 of the LMRA.[3] 29 U.S.C. § 185 (2000); *Brown v. Witco Corp.,* 340 F.3d 209, 218 (5th Cir.2003). Under the LMRA, courts must apply a highly deferential standard when reviewing arbitration awards.[4] *Int'l Chem. Workers Union v. Columbian Chems. Co.,* 331 F.3d 491, 494 (5th Cir. 2003).

> The function of the court is very limited when the parties have agreed to submit all questions of contract interpretation to the arbitrator .... The courts, therefore, have no business weighing the merits of the grievance, considering whether there is equity in a particular claim, or determining whether there is particular language in the written instrument which will support the claim.

*United Paperworkers Int'l Union v. Misco, Inc.,* 484 U.S. 29, 36–37, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987) (quoting *United Steelworkers v. Am. Mfg. Co.,* 363 U.S. 564, 567–68, 80 S.Ct. 1363, 4 L.Ed.2d 1432 (1960)). A court must affirm an arbitration award as long as it " 'draws its essence from the collective bargaining agreement,' and is not merely '[the arbitrator's]

own brand of industrial justice' ...." *Id.* at 36, 108 S.Ct. 364 (quoting *Steelworkers v. Enter. Wheel & Car Corp.,* 363 U.S. 593, 596, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960)); *see also Int'l Chem. Workers Union,* 331 F.3d at 495 (using *Steelworkers'* standard of review to refuse to vacate an arbitrator's award).

■ The Fifth Circuit provides guidance in applying the "essence test" by stating "the arbitrator's award 'must have a basis that is at least rationally inferable, if not obviously drawn, from the letter or purpose of the collective bargaining agreement.' " *Dow Chem. Co. v. Local No. 564, Int'l Union of Operating Eng'rs.,* 246 F.Supp.2d 602, 609 (S.D.Tex.2002) (citing *Houston Lighting & Power v. Int'l Bhd. of Elec. Workers, Local Union No. 66,* 71 F.3d 179, 183 (5th Cir.1995)) (quoting *Execu-tone Info. Sys., Inc. v. Davis,* 26 F.3d 1314, 1325 (5th Cir.1994)). This standard must be "interpreted expansively so as to uphold the award, rather than restrictively." *Dow Chem. Co.,* 246 F.Supp.2d at 609 (citations omitted). If "the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority[,]" the award must be affirmed. *Misco,* 484 U.S. at 38, 108 S.Ct. 364. The award must also be affirmed "[i]f the award is rationally inferable from the facts before the arbitrator." *Six Flags Over Tex., Inc. v. Int'l Bhd. of Elec. Workers,*

---

**3.** In its Supplemental Index of Authority in Support of Its Response and Objection to Plaintiff's Motion for Summary Judgment, DSI cites the FAA and four cases relying on the FAA to this Court as authority for its position. However, the Fifth Circuit has expressly stated "the FAA does not apply to cases reviewing arbitration awards pursuant to a collective bargaining agreement ...." *Brown v. Witco Corp.,* 340 F.3d 209, 217 (5th Cir.2003). Further, "[w]hen an arbitration decision arises from the terms of the collective bargaining agreement, judicial review of the arbitration award is authorized not by the FAA but by the terms of Section 301 of the Labor Management Relations Act." *Id.* at 218. Courts may, however, look to the FAA for guidance in reviewing an arbitration award under a collective bargaining agreement. *Id.* at 218 n. 8.

**4.** Even under the FAA, "[j]udicial review of an arbitration award is extraordinarily narrow," buttressing a "national policy favoring arbitration[.]" *Forsythe Int'l v. Gibbs Oil Co. of Tex.,* 915 F.2d 1017, 1020–22 (5th Cir. 1990).

*Local No. 116,* 143 F.3d 213, 214 (5th Cir.1998) (quoting *Valentine Sugars, Inc. v. Donau Corp.,* 981 F.2d 210, 214 (5th Cir.1993)).

### A. *The Federal Mediation and Conciliation Service*

■ DSI contends the award should be vacated because the arbitrator did not faithfully adhere to Federal Mediation and Conciliation Service ("FMCS") policies. Specifically, DSI contends Arbitrator Bankston considered IAM's post-hearing brief, which was not provided to DSI, in violation of the FMCS's Code of Professional Responsibility for Arbitrators of Labor–Management Disputes ("Code") § 6(A)(2).[5] As support for its argument, DSI points to a finding by the Arbitrator Review Board of the FMCS, which determined Arbitrator Bankston considered the post-hearing brief in violation of FMCS Code requirements and admonished Arbitrator Bankston by placing a letter in his file.[6] In addition, DSI asserts that the parties "clearly incorporated the rules and regulations of the FMCS" in the collective bargaining agreement. Therefore, this Court must determine if the FMCS rules are incorporated in the collective bargaining agreement and if Arbitrator Bankston operated outside those rules; if these two issues are answered affirmatively, then the Court should vacate the award as not drawing its essence from the collective bargaining agreement.

#### 1. *The Collective Bargaining Agreement*

Once an employee decides to appeal the company's decision in arbitration, Article IX of the collective bargaining agreement requires the parties to obtain a list of arbitrators from the FMCS and select an arbitrator. The collective bargaining agreement defines the arbitrator's powers as being "limited to the application and interpretation of this Agreement and [the arbitrator] shall have no authority to add to, subtract from, modify or amend in any way the terms or conditions o[f] this Agreement." Article IX also specifies that the written decision of the arbitrator will be "final and binding upon the Company and the Union, and the employee."

■ In this case, DSI concludes that the collective bargaining agreement "clearly" incorporates the "rules and regulations of the FMCS." However, the Court finds the collective bargaining agreement only refers to FMCS as the agency from which the list of arbitrators should be obtained. Otherwise, there is no mention of the FMCS. Even if the collective bargaining agreement did incorporate the rules and regulations of the FMCS, it was Arbitrator Bankston's duty to interpret those rules, as both parties hired him to settle their dispute over the interpretation of the collective bargaining agreement. *See* 29 U.S.C. § 173(d) (2000) ("[Arbitration] is hereby declared to be the desirable method for settlement of grievance disputes arising over the application or interpretation of an existing collective-bargaining agreement."); *Misco,* 484 U.S. at 37, 108 S.Ct. 364 ("[I]t is the arbitrator's view of the facts and of the meaning of the contract that they have agreed to accept."); *Steelworkers,* 363 U.S. at 597, 80 S.Ct. 1358 ("[A]n arbitrator is confined to inter-

---

**5.** "An arbitrator must not consider a post hearing brief or submission that has not been provided to the other party." *Code of Professional Responsibility for Arbitrators of Labor–Management Disputes of the: Federal Mediation and Conciliation Service* § 6(A)(2) (1996).

**6.** The Court determines that the FMCS's finding that Arbitrator Bankston violated FMCS rules is not binding on this Court.

pretation and application of the collective bargaining agreement[.]"). Therefore, DSI's assertion of clear incorporation is without merit.

### 2. *Arbitrator Bankston's Conduct*

■ DSI contends Arbitrator Bankston acted outside his scope of authority and is guilty of misconduct because he considered *ex parte* communication. Vacatur of an arbitration award is permissible if an arbitrator acts outside his scope of authority or procures his decision through fraud or dishonesty. *Misco,* 484 U.S. at 38, 108 S.Ct. 364. Here, the FMCS Review Board found that Arbitrator Bankston erroneously "considered" the post-hearing brief in his decision. However, this Court disagrees.

■ First, although IAM admits it failed to send a copy of the post-hearing brief to DSI, DSI presents no evidence that Arbitrator Bankston actually considered IAM's post-hearing brief in making his decision. DSI contends that because Arbitrator Bankston cited to IAM's post-hearing brief three times in his written opinion that he was "clearly influenced" by it. However, all citations to the post-hearing brief are contained in the section titled "Positions of the Parties" and sub-titled "The Union," and all references to the post-hearing brief in the document are expressed solely as opinions of IAM.[7] There is no mention of the post-hearing brief in the "Discussion and Award" section. Instead, Arbitrator Bankston extensively cited to evidence presented during the arbitration proceedings. Therefore, the Court has no basis to conclude that Arbitrator Bankston considered the post-hearing brief in reaching his decision in favor of IAM.[8]

Next, DSI contends IAM's post-hearing brief contained new evidence and factual errors not presented to DSI, causing DSI to be "improperly deprived of its right to review and respond, or attempt to correct and/or clarify the falsehoods that may be contained therein."[9] However, there is no evidence DSI would have been permitted to file a reply brief if it had received a copy of IAM's post-hearing brief. As stated above, DSI "expressly waived opportunity for presentation of a Post–Hearing Brief." Therefore, even if DSI had received a copy of the brief, it would not have impacted Arbitrator Bankston's decision because DSI could not have communicated with Bankston thereafter.

7. DSI contends IAM referred to a previous arbitration in its post-hearing brief which "may have violated the confidentiality rules afforded to arbitral forums." Arbitrator Bankston did refer to a previous arbitration in the "Pertinent Facts" section, but he did not cite to the post-hearing brief. It is unclear from the record whether Arbitrator Bankston had knowledge of the previous arbitration before he received IAM's brief, but there is no indication that knowledge of a previous arbitration influenced Arbitrator Bankston's decision.

8. The Court notes that, even if it were reviewing the award under the FAA, any claims of fraud or dishonesty on Arbitrator Bankston's part would fail. The Fifth Circuit requires a "nexus between the alleged fraud and the basis for the [arbitrator's] decision." *Forsythe Int'l,* 915 F.2d at 1022. If the arbitrator rests his decision on "grounds clearly independent of issues connected to the alleged fraud, the statutory basis for vacatur is absent." *Id.*

9. Specifically, DSI contends IAM falsely stated the Senior Controller, who also failed to timely report the incident, was not disciplined. Further, DSI states the "work performance and/or discipline of other employees is not relevant to this proceeding." Even if the Court were to determine that DSI is correct, it is not relevant as Arbitrator Bankston did not discuss the disciplinary status of the Senior Controller in the Opinion and Award. Therefore, the Court cannot conclude that Arbitrator Bankston was in error.

Based on the foregoing, the Court concludes that Arbitrator Bankston was not acting outside his scope of authority under the collective bargaining agreement. The rules and regulations of the FMCS are not expressly incorporated into the collective bargaining agreement, and, even if they were, the Court cannot conclude that Arbitrator Bankston considered the post-hearing brief in reaching his ultimate decision.[10] Thus, Arbitrator Bankston did not procure his decision through fraud or dishonesty.

## B. *The Award*

As long as an arbitrator's award "draws its essence" from the collective bargaining agreement and the arbitrator is not fashioning "his own brand of industrial justice," the arbitrator's award is legitimate under the LMRA. *Misco*, 484 U.S. at 36, 108 S.Ct. 364; *see, e.g., Teamsters Local No. 5 v. Formosa Plastics Corp.*, 363 F.3d 368, 371 (5th Cir.2004) (upholding arbitrator's decision regarding timeliness of grievance filing); *Weber Aircraft, Inc. v. Gen. Warehousemen & Helpers Union Local 767*, 253 F.3d 821, 824 (5th Cir.2001) (holding arbitrator did not act beyond the ambit of his authority when he determined just cause for an employee's suspension without backpay); *Dow Chem. Co.*, 246 F.Supp.2d at 609 (upholding award to reinstated employees for past benefits because the award drew its essence from the parties' collective bargaining agreement).

In the instant case, Arbitrator Bankston's interpretation of the collective bargaining agreement clearly draws its essence from the collective bargaining agreement because his decision regarding whether DSI had just cause to terminate Thompson required an interpretation of "just cause" under the collective bargaining agreement. Here, the collective bargaining agreement gave the arbitrator authority to apply and interpret the agreement.[11] During the arbitration proceeding, IAM and DSI presented conflicting evidence as to how much separation actually existed between the two aircraft, and the pilots of the two aircraft had differing opinions as to whether or not a close call had occurred. Arbitrator Bankston determined the evidence did not indicate a "close call" occurred between the two aircraft Thompson was controlling. Applying the required highly deferential standard to the opinion of the arbitrator, the Court finds Arbitrator Bankston could reasonably infer from the facts before him that a close call had not occurred and DSI did not have just cause to terminate Thompson. Accordingly, the Court hereby

ORDERS Plaintiff IAM's Motion for Summary Judgment is GRANTED and Defendant DSI's Motion for Summary Judgment is DENIED. The Court further

ORDERS DSI to comply with Arbitrator Bankston's Award of June 18, 2003.

10. Furthermore, even if the award were reviewed according to the FAA, as is suggested by DSI, an evidentiary error must so affect "the rights of a party that it may be said that he was deprived of a fair hearing." *Forsythe*, 915 F.2d at 1023 (citations omitted). Because there is no indication Arbitrator Bankston even considered the alleged new evidence, the presentation of this evidence in the post-hearing brief cannot be said to have been so prejudicial as to render the proceeding unfair.

11. Article IX of the collective bargaining agreement states, "[t]he arbitrator's powers shall be limited to the *application* and *interpretation* of this Agreement and he shall have no power to add to, subtract from, modify or amend in any way the terms or conditions o[f] this Agreement." (emphasis added).

All other relief not expressly granted herein is denied.[12]

12. The Court declines to address attorney's fees at this time, and the parties may submit additional briefing on this issue.