United States Court of Appeals
Fifth Circuit

**F I L E D**

August 3, 2007

Charles R. Fulbruge III
Clerk

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No. 06-10609

STEVEN A. SERLING,

Plaintiff-Appellant,

versus

AMERICAN AIRLINES, INC., a Texas Corporation,

Defendant-Appellee.

Appeal from the United States District Court
for the Northern District of Texas
(4:05-CV-179)

Before KING, DAVIS, and BARKSDALE, Circuit Judges.

PER CURIAM:[*]

Steven Serling challenges a summary judgment against his claim
for unlawful retaliatory discharge, under the Americans with
Disability Act (ADA).  **SUMMARY JUDGMENT AFFIRMED; TAXED COSTS
AFFIRMED IN PART AND VACATED IN PART; REMANDED.**

I.

Serling began his employment with American Airlines as an
aircraft mechanic in December 1990.  He was terminated on 31 July
2003.

---

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

From September 2001 to March 2002, Serling was placed on a six-month involuntary suspension due, in part, to a determination by American's medical department that he was unable to perform safety-sensitive work. In response to this restriction, Serling filed a disability-discrimination claim with the Equal Employment Opportunity Commission (EEOC) in September 2001. Subsequently, in December 2001, Serling filed a corresponding action in district court. In March 2002, after being cleared by American's medical department, Serling returned to work. He settled his action against American in February 2003.

In the years preceding his termination, Serling was cited for a number of work-related problems. His personnel file contained 12 citations, ranging from his failure to perform simple job-related tasks and follow company protocol, to poor hygiene. (In early 2004, for the union-related arbitration discussed *infra*, a neutral arbitrator found Serling exhibited a "pattern of extremely poor judgment ... characterized by a lack of safety and training concerns, by many failures to follow simple instructions and perform relatively simple mechanical tasks, and by failing to perform when he was watched".) Two incidents in July 2003 led to his termination.

On 14 July, Serling improperly installed a clamp and failed to engage a safety latch on an aircraft engine. He admitted this mistake to his direct supervisor, Victor Buchenot, who investigated

2

the incident and confirmed the error. American later deemed the engine damaged beyond repair.

The next day, Serling committed another serious work-related error: while attempting to unmount an aircraft engine from a shipping stand, Serling began to remove the bolts which secured the engine to the stand, without first attaching the engine to an overhead hoist. (Serling again concedes he made this mistake.) After the mistake was called to his attention, Serling stopped working and left the area. Buchenot investigated the incident and determined Serling committed a serious error which could have resulted in damage to the engine. Buchenot also faulted Serling for walking away and failing to complete his assignment.

Because of these incidents, Serling was terminated on 31 July 2003. Serling filed a grievance under the Collective Bargaining Agreement (CBA) to contest his termination. He maintained his mistakes were not so serious as to merit termination. Pursuant to the CBA, the grievance was heard by American's chief operating officer, who denied reinstatement. Serling's grievance was then heard by a three-member arbitration panel on 29 January and 20 February 2004. The panel, composed of one American representative, one union representative, and the above-referenced neutral arbitrator, upheld the termination.

Serling filed this action in March 2005 under the ADA, 42 U.S.C. §§ 12101-12213. He claimed American terminated his

employment in response to his having engaged in activity protected by the ADA: his EEOC claim in September 2001 (protected activity). In April 2006, summary judgment was awarded to American. Without deciding whether Serling established a *prima facie* retaliation claim, the court concluded: American showed, as a matter of law, a non-retaliatory justification for terminating Serling's employment; and American would have terminated Serling even in the absence of the protected activity. Costs were taxed against Serling that May.

## II.

Serling maintains the district court erred by granting summary judgment and abused its discretion in taxing costs against him.

### A.

In challenging the summary judgment, Serling contends the district court erred: by concluding American established, as a matter of law, it would have terminated Serling regardless of his protected activity; and, in reaching this conclusion, improperly relied on the arbitration panel's decision. In the alternative, Serling claims: he is entitled to a mixed-motive analysis of his claim; and he met that burden by showing retaliation was a substantial motivating factor in his termination.

A summary judgment is reviewed *de novo*, applying the same standard as the district court. ***Rachid v. Jack in the Box, Inc.***, 376 F.3d 305, 308 (5th Cir. 2004). Such judgment is proper when

4

"the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law". FED. R. CIV. P. 56(c); *see, e.g.*, **Celotex Corp. v. Catrett**, 477 U.S. 317, 322-23 (1986). In reviewing a summary judgment, all justifiable inferences are drawn in favor of the nonmovant. *E.g.*, **Bodenheimer v. PPG Indus., Inc.**, 5 F.3d 955, 956 (5th Cir. 1993). Concerning the court's admission of any evidence factually found at an arbitration hearing, "the district court ... is vested with broad discretion in determining the admissibility of evidence, and its rulings on such evidentiary matters are reviewed for abuse of that discretion". **Graef v. Chem. Leaman Corp.**, 106 F.3d 112, 116-117 (5th Cir. 1997); *see* FED. R. EVID. 103(a). "Where an arbitral determination gives full consideration to an employee's [statutory] rights, a court may properly accord it great weight." **Alexander v. Gardner-Denver Co.**, 415 U.S. 36, 60 n.21 (1974).

In reviewing a summary judgment against a retaliation claim, this court applies the burden-shifting framework provided in **McDonnell Douglas Corp. v. Green**, 411 U.S. 792 (1973). Serling must establish a *prima facie* case for retaliation by showing: (1) he engaged in protected activity; (2) he suffered an adverse-employment action; and (3) a causal link existed between the protected activity and the adverse-employment action. *E.g., **Long***

5

*v. Eastfield Coll.*, 88 F.3d 300, 304 (5th Cir. 1996). Once the employee establishes a *prima facie* retaliation claim, the burden of production shifts to the employer who must show a legitimate, non-retaliatory justification for its action. *E.g., **Machinchick v. PB Power, Inc.***, 398 F.3d 345, 350 (5th Cir. 2005). The burden then shifts back to the employee "to establish that the employer's permissible reason is actually a pretext for retaliation". ***Septimus v. Univ. of Houston***, 399 F.3d 601, 607 (5th Cir. 2005).

Based of our review of the record, summary judgment was proper, essentially for the reasons stated in the district court's April 2006 opinion, which held, *inter alia*: Serling "failed to reveal a conflict in [the] substantial evidence on the ultimate issue of retaliation".

### B.

Taxed costs of $3,176.75 against Serling were for: (1) copies of four depositions of American witnesses; and (2) videotaping Serling's deposition. He contests those costs being taxed to him but does not dispute their amount.

Under 28 U.S.C. § 1920, a party may recover fees for copies of depositions and any other papers as long as they are necessarily obtained for use in the case. While, "[i]tems proposed by winning parties as costs should always be given careful scrutiny", *see* ***Farmer v. Arabian Am. Oil Co.***, 379 U.S. 227, 235 (1964), "[t]he district court has *broad discretion* in taxing costs, and we will

6

reverse only upon a clear showing of abuse of discretion". *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1049 (5th Cir. 1998) (emphasis added).

## 1.

Regarding the deposition copies, Serling contends American: did not demonstrate the necessity of obtaining copies of depositions of their own witnesses; had full knowledge of the substance of their employees' testimony; and did not refer to any portion of this testimony in their summary judgment motion. Despite Serling's claims, the deposition copies were necessary for American's preparation for the summary judgement proceedings, various pre-trial proceedings (including drafting the joint pre-trial stipulation), and trial. Therefore, in accordance with the "broad discretion" afforded district courts in taxing costs, we conclude the court did *not* abuse its discretion in regard to the deposition copies.

## 2.

The district court did err, however, in taxing costs for American's videotaping his deposition. As we have previously observed, "[t]here is no provision [in 28 U.S.C. § 1920] for videotapes of depositions". *Id*. Therefore, we vacate those videotaping costs taxed against Serling.

III.

Accordingly, judgment against Serling is **AFFIRMED**; the taxed costs for the deposition copies are **AFFIRMED**, but those for videotaping Serling's deposition are **VACATED**; and this matter is **REMANDED** to district court.

*AFFIRMED IN PART; VACATED IN PART; REMANDED*